

DEC 04 2023



CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

CARL A. WESCOTT
8210 E. Via de la Escuela
Scottsdale, AZ 85258
*in propria persona*
CARL.WESCOTT@CAPITALIDE.AS
+1 276 773 7377

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL A. WESCOTT, <br><br> Plaintiff, <br><br> vs. <br><br> MR. STU WILSON <br><br> Defendants. <br><br> + DOES 1 through 10 | Civil Action No. 2:23CV2811-DJC-JDP (PS) <br><br> **PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; UNJUST ENRICHMENT; and NEGLIGENCE;** |

Plaintiff Carl A. Wescott, proceeding *pro se,* complains of Defendant Mr. Stu Wilson, and in support of his complaint, the Plaintiff states as follows:

**The Parties: Plaintiff and Defendants**

1. Carl Wescott is an individual presently residing in Scottsdale, Arizona.

2. Defendant Mr. Stu Wilson ("Wilson", or "the Defendant") is an individual who resides in Sacramento, California.

3. Collectively, the Plaintiff and Wilson are "the Parties."

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF
CONTRACT; UNJUST ENRICHMENT; and NEGLIGENCE;**

**Allegations regarding conspiracy between defendants**

4. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, Mr. Stu Wilson, as an individual, in addition to acting for himself and on his own behalf individually, as well as for the benefit of his marital community (if any), is and was acting as the agent, servant, employee, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the other Defendants (individual and entities) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

5. Plaintiff further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all the other Defendants.

6. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

7. In addition, upon information and belief, there are nefarious corporate, trust, and other entity type Defendants involved in these conspiracies, currently unknown to Plaintiff. They shall emerge with the benefit of legal discovery.

8. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, any and all such corporate entities, in addition to acting for itself and for its own behalf, was acting as the agent, servant, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the Defendants (entity and individual) and

within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

9. Plaintiff further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all of the Defendants. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

## Jurisdiction and Venue

10. Mr. Stu Wilson lives and works in Sacramento, California. Thus, this Court is the appropriate venue for adjudication of the parties' issues.

11. This is an action for damages pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and a claim for damages greater than US $75,000. Alleged damages are explained in further detail below as they are critical to this Court establishing subject-matter jurisdiction.

12. Supplemental jurisdiction over the Plaintiff's state law claims is pursuant to 28 U.S.C. § 1367 and the facts that the individual defendant lives and works in this district and the tortious acts, non-acts, and negligence complained of herein occurred in this district, too.

## Case Summary

Some years ago, prior to 2017, the Plaintiff consigned approximately 1000 (best guess) Fillmore posters for sale with Mr. Wilson. Mr. Wilson has a business, believed to be a sole

proprietorship, called Poster Planet, in which he buys and sells Fillmore posters and other rare music art. Part of the reason that the Plaintiff consigned the posters with Mr. Wilson is that Mr. Wilson specializes in the sale of Fillmore posters, and Mr. Wilson was confident he could sell the great majority of the Plaintiff's posters within a reasonable number of years.

The Plaintiff contacted Mr. Wilson in 2017 to see about getting money for sales thus far and did not hear back from him then. More recently, the Plaintiff has called Mr. Wilson, has left voicemail for Mr. Wilson, has emailed Mr. Wilson, has text'd Mr. Wilson, and has WhatsApp'd Mr. Wilson to get the monies that Mr. Wilson owes for the sale of the Plaintiff's former posters. Mr. Wilson has refused to speak to the Plaintiff and is not replying to texts or WhatsApps or email. Unfortunately, the Plaintiff has now concluded that Mr. Wilson simply stole the Plaintiff's former posters and/or the money that Mr. Wilson gained from selling most of them. Thus, this appears to be a case of criminal fraud on the part of Mr. Wilson, as well as willful and wanton negligence.

In the interest of completeness with the possibilities, the Plaintiff must also mention Robert J. Block and the Bob Block Criminal Gang (Exhibit A).

**Subject-Matter Jurisdiction – Background and Legal Standards**

13. With damages of $75,000 and the diversity of citizenship of Plaintiff and Defendants, the Plaintiff would qualify for United States District Court under 28 U.S. Code § 1332(a)(1):

> DIVERSITY OF CITIZENSHIP; AMOUNT IN CONTROVERSY; COSTS
>
> **(a)** The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
> **(1)** citizens of different States;   *(28 U.S. Code § 1332 (a)(1))*

14. The Plaintiff resides in Arizona and the Defendant is a citizen of California.

15. Thus, the parties have complete diversity of citizenship.

16. The Plaintiff will add the facts, logic, and reasoning supporting the Plaintiff's thinking that his recoverable damages will be greater than US $75,000.

17. To qualify for federal court under complete diversity of citizenship, the amount in controversy must exceed the sum or value of $75,000, exclusive of interest and costs (*28 U.S.C. § 1332(a) (2014)*).

18. The determination of the amount in controversy for federal subject matter jurisdiction is an issue decided under federal law. 14AA FEDERAL PRACTICE AND PROCEDURE § 3702 (4th ed. 2014) [hereinafter "FEDERAL PRACTICE"]. See *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352 (1961).

19. Federal courts will, however, look to applicable state law to determine the nature of the plaintiff's substantive claim and related damages. FEDERAL PRACTICE § 3702. See *Horton*, 367 U.S. at 352-353.

20. Numerous courts, including the United States Supreme Court have held that the amount in controversy for jurisdictional purposes is measured by the direct pecuniary value of the right that the plaintiff seeks to enforce or the value of the object that is the subject matter of the suit. FEDERAL PRACTICE § 3702.5. See *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L. Ed. 1067 (1947).

21. The direct pecuniary value of the right is simply an estimate of the total amount in dispute rather than an assessment of liability. *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

22. The amount in controversy is determined without considering accrued or accruing interest or the costs associated with the lawsuit. (*28 U.S.C. § 1332(b)*)

23. Courts have held that collateral effects will not be taken into account when calculating the amount in controversy. FEDERAL PRACTICE § 3702.5. See *Healy v. Ratta*, 292 U.S. 263, 267 (1934) ("the collateral effects of the decree, by virtue of stare decisis, upon other and distinct controversies, may not be considered in ascertaining whether the jurisdictional amount is involved, even though their decision turns on the same question of law."). See also *New England Mortg. Sec. Co. v. Gay*, 145 U.S. 123, 130 (1892) ("It is well settled in this court that, when our jurisdiction depends upon the amount in controversy, it is determined by the amount involved in the particular case, and not by any contingent loss either one of the parties may sustain by the probative effect of the judgment, however certain it may be that such loss will occur.").

24. The amount in controversy may include compensatory damages including general and special damages such as pain and suffering and out of pocket loss. The amount in controversy may also include punitive damages. *Anthony v. Security Pac. Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996); *Watson v. Blankinship*, 20 F.3d 383, 386-387 (10th Cir. 1994).

25. When there is direct legal authority, by statute or contract, for the recovery of attorneys' fees, then the fee claim may be included in determining the amount in controversy regardless of whether the award of fees is mandatory or discretionary. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 155-1156 (9th Cir. 1998).

**Subject-Matter Jurisdiction with the Alleged Facts of this Particular Case**

26. The Plaintiff may get an attorney for this case in the future.

6
**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; UNJUST ENRICHMENT; and NEGLIGENCE;**

27. Assuming the average value of a Fillmore poster is $40, the amount of money that Mr. Wilson owes the Plaintiff (before interest, punitive damages and consequential damages) is likely around $40,000.

28. Mr. Wilson had a duty to the Plaintiff, the Defendant's customer.

29. The Plaintiff expects to prove willful and wanton neglect and negligence on the part of Mr. Wilson, and thus expects to be awarded exemplary damages, that might double or triple the $40,000 base damages (to the range of $80,000 to $120,000).

30. The Plaintiff does reasonably assume that the cost of an attorney, when he hires one, will be at least tens of thousands of dollars, even if he hires one later in our legal process. Let's assume that attorney fees will be $50,000 or more (which the Plaintiff would get back as part of the judgment or award at trial, or in any settlement along the way).

31. Thus, the Plaintiff believes that relevant damages for the possibility of federal subject matter jurisdiction are between $130,000 and $170,000.

**Underlying Facts & Background Context**

32. Mr. Wilson and the Plaintiff were friends starting in the late 1990s, with their shared interests of music and art.

33. The Plaintiff was also a customer of Mr. Wilson's, buying many Fillmore posters from him, among other artwork.

34. Some time prior to 2017, the Plaintiff consigned many hundreds of Fillmore posters with Mr. Wilson.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; UNJUST ENRICHMENT; and NEGLIGENCE;**

35. The reason the Plaintiff believes that the number was approximately 1000 Fillmore posters is that the Plaintiff used to own that many posters.

36. The Plaintiff believes that there were perhaps a few dozen framed posters that he did not consign with Mr. Wilson.

37. The Plaintiff does not remember if he and Mr. Wilson signed a contract. If the parties signed a contract, then Mr. Wilson clearly has breached that contract, in stealing his posters and money.

38. If there is a contract, he expects to get it from Mr. Wilson in discovery.

39. If there wasn't a signed contract, then Mr. Wilson still has been negligent in his duties to the Plaintiff and has been unjustly enriched in stealing the Plaintiff's posters and/or tens of thousands of dollars of the Plaintiff's money.

## Jury trial

40. Under the Seventh Amendment to the United States Constitution, the Plaintiff has a right to a jury trial for his Constitutionally-protected petitioning rights. (Also, as per *Fed. R. Civ. P 38(b)*).

41. The Plaintiff hereby respectfully requests a jury trial on all issues raised herein, including all triable facts and issues related to his current causes of action and any facts, issues, requests, and/or causes of action that the Plaintiff or his future attorney may add within the timelines allowed by this Court.

### Count I – Breach of Contract (if contract signed)

42. The Plaintiff realleges paragraphs 1-41 as if fully set out herein.

43. The Plaintiff entered into a valid, signed binding written contract with Defendant Mr. Wilson.

44. The Plaintiff fully performed by providing many hundreds of Fillmore posters to Mr. Wilson, and also other music-related posters and artwork, for Mr. Wilson to sell for him.

45. Mr. Wilson has a business, a sole proprietorship, called Poster Planet.

46. Mr. Wilson had the ability and the means to sell the Plaintiff's posters.

47. Mr. Wilson now refuses to talk to the Plaintiff and will not respond to emails, texts, or WhatsApps, unfortunately.

48. Mr. Wilson has breached the Parties' contract by not paying the Plaintiff the money from selling the Plaintiff's posters.

49. At this point, Mr. Wilson has stolen all the posters, and the money for the ones he did sell.

50. This constitutes a breach of the Parties' contract.

51. The Plaintiff has been damaged as a result of the Defendant's breaches by losing what the Plaintiff estimates are US $40,000 in base damages.

52. All allegations and damages to be fully proven at jury trial.

### Count II – Unjust Enrichment (if no contract signed)

53. The Plaintiff realleges paragraphs 1-41 as if fully set out herein.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; UNJUST ENRICHMENT; and NEGLIGENCE;**

54. The Plaintiff should not need the Unjust Enrichment cause of action, because it's quite possible the Parties signed a valid, binding contract.

55. The Plaintiff has therefore pled the Breach of Contract cause of action above (Count I).

56. However, in case there was no signed contract or there is or are technical deficiencies in the contract, the Plaintiff pleads that the Defendant Mr. Wilson has been unjustly enriched.

57. The Defendant has had possession and control of the Plaintiff's former posters for years, as the Defendant needed to have possession of them to sell them for the Plaintiff.

58. The Defendant presumably has sold the great majority of the posters, as promised, but has pocketed all of the Plaintiff's money and stolen it (as well as any remaining posters).

59. The Defendant has therefore received the benefit of money and posters from the Plaintiff (the latter having value, too, especially for someone who has a business selling posters).

60. That benefit was conferred to the detriment of the Plaintiff, who no longer controls or has possession of his former posters, and cannot sell them himself.

61. The Defendant has not paid for the Property.

62. As a matter of fairness and equity, even if there is a technical deficiency in the contract, the Defendant should pay the Plaintiff his money from the sale of the posters, as well as the value of any remaining posters.

63. If necessary, this Court should impose a quasi-contract upon the Defendant to pay the Plaintiff for any remaining posters, as the Plaintiff had a reasonable expectation that the Defendant would sell the posters and pay the Plaintiff for them, as promised.

64. All allegation and damages to be fully proven at jury trial.

## Count III – Negligence

65. The Plaintiff realleges paragraphs 1-41 as if fully set out herein.

66. Mr. Wilson has a duty to the Plaintiff, his customer.

67. The Defendant also owed the Plaintiff a high duty of good faith, fair dealing, honest performance, and accountability.

68. The Plaintiff is unsure that Mr. Wilson finished selling all of his posters - or at least the great majority. (Mr. Wilson stopped responding to the Plaintiff some time ago and now simply refuses to respond to the Plaintiff's phone calls, texts, email, or Whatsapps)

69. Mr. Wilson either sold the posters or *should have* sold the posters.

70. If Mr. Wilson did not even bother to sell the posters as promised, Mr. Wilson was negligent in that regard.

71. Regardless, in not paying the Plaintiff, the Defendant was negligent.

72. The Defendant's negligence is the proximate cause of the damages and financial harm to Plaintiff.

73. The Plaintiff has been damaged.

74. All allegations and the precise amount of damages shall be fully proven at jury trial.

WHEREFORE, PLAINTIFF PRAYS:

(a) As to Count I for all direct and consequential damages the Plaintiff incurred as a proximate result of the Defendant's breaches of contract;

(b) As to Count II for all direct and consequential damages the Plaintiff incurred as a proximate result of the Defendant's unjust enrichment;

11
**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; UNJUST ENRICHMENT; and NEGLIGENCE;**

(c) As to Count III for all direct and consequential damages the Plaintiff incurred as a proximate result of the Defendant's negligence along with the imposition of exemplary damages given the wanton and willful neglect of the Defendant's duty, to deter the Defendant from shirking their duties and committing such acts of negligence in the future;

(d) For reasonable compensation for the value of his time in representing himself until he hires an attorney (*quantum meruit*);

(e) For reasonable future attorney's and paralegal fees and costs including administrative, filing, service, Court reporter, jury fees, travel costs and for all other reasonable costs of this action and;

(f) For such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED

_____
Carl A. Wescott, *pro se*
November 28th, 2023

## VERIFICATION

I, Carl A. Wescott, under penalties provided by California and Arizona law as well as the federal laws of the United States of America, certify that the facts set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

*/s/ Carl A. Wescott*

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; UNJUST ENRICHMENT; and NEGLIGENCE;**

## Background of the Bob Block Criminal Gang (Exhibit A)

Robert J. Block is a former attorney, now disbarred (for forging judge's signatures), who then turned to a life of crime. The Plaintiff has had a lot of communications challenges of late, including with his cell phones and his emails. The Plaintiff, having drafted this lawsuit, received an anonymous phone call from a disgruntled unpaid member of the Bob Block Criminal Gang.

The Plaintiff does not know how Robert J. Block and the Bob Block Criminal Gang (Jon Wagner, Patty Boss, Kelly Lynch, John Belko, Paul Jones, Mark Rudolph and Jared Heissemann) knew he had drafted this legal complaint. The woman who called stated that Robert J. Block was going to forge a dismissal of the Plaintiff's lawsuit against Stu Wilson (which is part of the *modus operandi* of someone who forges judge's signatures, too). Recently, the Plaintiff has lost access to most of his emails and his laptops, so someone has obtained his passwords and has been shutting him out of his accounts.

From this the Plaintiff gathers that the Bob Block Criminal Gang is somehow involved in the thefts and monies from him by Stu Wilson. If Robert J. Block or another member of the Bob Block Criminal Gang does forge the Plaintiff's signature on a dismissal, then the Plaintiff will file a police report and request for investigation, and inform the Court. Obviously, this Court will not wish to allow Robert J. Block or the members of the Bob Block criminal gang to obstruct justice.

The Bob Block Criminal Gang members are San Francisco residents and also Arizona residents who have travelled to California to commit many serious crimes in the past:
- Bob Block is Robert J. Block - this is the Robert J Block in question (a former Chicago attorney who was disbarred, ended up homeless, and then turned to a life of crime): https://robertjblock.wordpress.com/2012/02/07/hello-world/
- Patty Boss is (or was) a San Francisco resident at 1005 Market Street #401.
- Jared Heissemann, John Belko, Mark Rudolph, Jon Wagner, Paul Jones and Kelly Lynch are Phoenix metropolitan area residents.

Mr. Block stole the Plaintiff's birth certificate and has admitted to stealing one of the Plaintiff's passports. The Plaintiff believes that Jared Heissemann, Mr. Block, Jon Wagner, and John Belko all have "Carl Wescott" identifications, obtained with the stolen birth certificate.

Bob Block Criminal Gang members have stolen many items from the Plaintiff's house, and from his hotel rooms (using Carl Wescott identification to get a replacement room key to enter the Plaintiff.

After serving discovery, the Plaintiff will add Robert J. Block and other Bob Block Criminal Gang members to this legal complaint if they are involved in these thefts, too, by Mr. Stu Wilson. Once the Plaintiff has more clarity on when and why Mr. Wilson (and any cohorts in crime) stole his posters and money, he will also be filing police reports.

1